IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DANIELLE L. LOPEZ,

              Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.

No. CV 08-00460-MO

OPINION AND ORDER

**MOSMAN, J.,**

Plaintiff Danielle L. Lopez ("Lopez") challenges the Commissioner's decision finding her not disabled under Titles II and XVI of the Social Security Act and denying her applications for Supplemental Security Income ("SSI"). I have jurisdiction under 42 U.S.C. § 405(g). For the following reasons, the Commissioner's decision is AFFIRMED.

I review the Commissioner's decision to ensure the Commissioner applied proper legal standards and that his findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

PAGE 1 - OPINION AND ORDER

## PROCEDURAL BACKGROUND

Ms. Lopez applied for SSI under Title XVI of the Social Security Act on July 9, 2004.

(A.R. 14.)  The Commissioner denied Ms. Lopez's application on September 27, 2004.  (A.R.

48.)  The application was again denied on reconsideration on January 18, 2005.  (A.R. 44.)  An

Administrative Law Judge ("ALJ") held a hearing and subsequently found Ms. Lopez not

disabled on June 21, 2007.  (A.R. 25, 31.)  Ms. Lopez appeals the ALJ's decision.

## FACTUAL BACKGROUND

### I.    Personal History

On the date she first filed her SSI application, Ms. Lopez was thirty years old.  (A.R. 23.)[1]

She is unmarried and lives with her two children, ages eight and twelve.  (A.R. 57, 293.)  Ms.

Lopez has had ten years of education and earned a GED.  (A.R. 293.)  She attended special

education classes from 1983 to 1986, but has never been diagnosed with any specific learning

disabilities.  (A.R. 156-58, 293.)  Ms. Lopez has worked in a variety of short-term jobs, including

cashier, receptionist, and cleaner.  (A.R. 294-95.)

Ms. Lopez dresses and grooms herself.  (A.R. 304.)  She also does weekly household

chores, including vacuuming, dusting, washing dishes, and making beds.  (*Id*.)  Her son has been

helping her with the chores since 2004.  (A.R. 315.)  She prepares food three times a day for her

children during the summer, and once a day during the school year.  (A.R. 304, 314.)  Her meals

usually consist of microwave dinners, canned foods, and hamburgers.  (A.R. 314-15.)  She also

reads to her children once a week, plays with them, and takes them to the park.  (A.R. 93, 312.)

---

[1] Citations "A.R." refer to indicated pages in the official transcript of the administrative record filed on October 9, 2008 (#17).

Ms. Lopez always pays the bills on time.  (A.R. 311-12.)

Ms. Lopez cannot drive; instead, her boyfriend, Mr. Nice, drives her to places.  (A.R. 305, 293.)  She has taken public transportation on seven occasions.  (A.R. 307.)  Mr. Nice drives her to the grocery store twice a month so she can grocery shop.  (A.R. 305.)  He drives her to the children's school conferences twice a year.  (A.R. 310.)  Ms. Lopez attends her children's school activities and performances throughout the year; in 2007, she attended a total of eight.  (A.R. 310.)  Mr. Nice drives her to the library twice a month.  (A.R. 308.)  She has also taken overnight trips with Mr. Nice and her children to visit her son's grandmother on two separate occasions.  (A.R. 305-06.)

Ms. Lopez exercises in her house by stretching and doing aerobics for twenty minutes at a time, twice a week.  (*Id*.)  During the summers when the pools are open, she swims three times a week.  (A.R. 205, 312.)  Her friends visit her three times a week.  (A.R. 305, 313.)

## II.    **Medical History**

Ms. Lopez alleges disability since July 9, 2004,[2] due to asthma, emotional problems, allergies, memory problems from medication, stress seizures, right arm problems, depressive condition, and depression.  (A.R. 70, 14.)  Ms. Lopez has a documented history of seizures, low intellectual functioning, and bipolar disorder with agoraphobic characteristics.[3]  (A.R. 204-07.)

---

[2] Ms. Lopez initially alleged disability beginning January 31, 1992.  (A.R. 71.)  She amended her alleged disability onset date to July 9, 2004 at the ALJ hearing.  (A.R. 14.)  The ALJ did not agree to the amended alleged onset date.  (*Id*.)

[3] Agoraphobia is defined as "anxiety about being in places or situations from which escape might be difficult (or embarrassing) or in which help may not be available in the event of having . . . panic-like symptoms . . . The anxiety typically leads to a pervasive avoidance of a variety of situations that may include being alone outside the home or . . . being in a crowd of people."  Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 432 (4th

In May of 2004, Ms. Lopez suffered a bipolar disorder breakdown and was subsequently hospitalized at the Oregon Health and Science University Hospital ("OHSU") from May 10 to May 17.[4]  (A.R. 20, 238, 270.)  At OHSU, she tested positive for THC indicating recent marijuana use.  (A.R. 238, 246, 270).  The record indicates that this was the only time she was involuntarily hospitalized.  (A.R. 20.)

Ms. Lopez claims that she started to experience stress related seizures, diagnosed as pseudoseizures, in May of 2006.[5]  (A.R. 196, 297-98.)  Her seizures usually last around two seconds each and occur one to three times a week at approximately six in the evening.  (A.R. 298.)  During the seizures, Ms. Lopez cannot move and communicate, but remains conscious and aware of her surroundings, and experiences no after-effects.  (A.R. 204, 298.)

## ALJ'S FINDINGS

The ALJ made her decision based upon the five-step sequential process established by the Commissioner.  20 C.F.R. § 416.920 (establishing the five-step evaluative process for SSI claims); *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).

The ALJ's decision found that Ms. Lopez's reactive airway disease, pseudoseizures, borderline or low average intellectual functioning, bipolar disorder, and anxiety disorder were

_____

ed. text revision 2000).  Ms. Lopez alleges that she is afraid to be around other people or go outside her home.  (A.R. 86.)

[4] Although Ms. Lopez claims that she was hospitalized for a period of eighteen days, the record clearly shows that the hospitalization lasted seven days.  (A.R. 20, 218, 251-53, 270.)

[5] In a progress note dated August 20, 2004, Dr. Blanchard noted that Ms. Lopez started complaining of seizures a few weeks prior to the August meeting.  (A.R. 204.)  The alleged onset date of Ms. Lopez's seizures is unclear due to the inconsistent dates provided by Ms. Lopez during the ALJ hearing (A.R. 298) and Dr. Blanchard's medical notes (A.R. 196-204).

PAGE 4 - OPINION AND ORDER

"severe impairments" at step two in the sequential process.  (A.R. 16.)  The ALJ found that these

impairments did not meet or medically equal a disorder listed in the Commissioner's regulations,

and assessed Ms. Lopez's residual functional capacity ("RFC"):

> [T]he claimant has the residual functional capacity to perform a
> range of work at all exertional levels but with the following
> nonexertional limitations:  she is restricted to simple, unrushed
> tasks involving no more than casual or routine social interaction
> with the public.  Additionally, she should avoid hazards.

(A.R. 18.)  The ALJ found that Ms. Lopez could perform jobs existing in significant numbers in

the national economy at step five and therefore found Ms. Lopez not disabled.  (A.R. 23-24.)

## DISCUSSION

Disability is defined as the "inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less

than 12 months."  42 U.S.C. § 423(d)(1)(A).  In determining whether a claimant is disabled, the

ALJ must conduct a five-step sequential evaluation process.  20 C.F.R. § 416.920.  The claimant

bears the burden of steps one through four; the burden of proof then shifts to the Commissioner

at step five.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  The district court must affirm

the Commissioner's decision if it is based on proper legal standards and the findings are

supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); *Batson,* 359 F.3d

at 1193.  "Substantial evidence means more than a mere scintilla but less than a preponderance; it

is such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion."  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

"The ALJ is responsible for determining credibility, resolving conflicts in the medical

testimony, and resolving ambiguities." *Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the court may not substitute its judgment for that of the Commissioner. *Batson,* 359 F.3d at 1196. The Commissioner's decision must be upheld, even if the "evidence is susceptible to more than one rational interpretation." *Andrews,* 53 F.3d at 1039-40.

Ms. Lopez argues that the ALJ erred in concluding that she was not disabled because the ALJ improperly rejected Ms. Lopez's testimony, improperly rejected or minimized opinions of various physicians, improperly determined Ms. Lopez's RFC, and erred at step five of the process. For the reasons discussed below, I disagree.

## I.   The ALJ Properly Rejected the Claimant Danielle Lopez's Testimony

Ms. Lopez contends that the ALJ improperly discredited and rejected her subjective testimony regarding her symptoms. (Pl.'s Br. (#22) 26-28.) She argues that the ALJ improperly considered evidence and testimony regarding Ms. Lopez's work history, social activities, improvement in health, and history of drug use. For the reasons discussed hereafter, the ALJ rejected Ms. Lopez's testimony based on clear and convincing reasons.

"Credibility determinations are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). The Ninth Circuit set out a threshold test in *Cotton v. Bowen* to assist the ALJ in deciding whether to accept a claimant's subjective symptom testimony. 799 F.2d 1403 (9th Cir. 1986), *aff'd in Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991). This threshold test imposes two requirements: the claimant must produce objective medical evidence of an impairment or impairments, and the claimant must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. *Smolen v.*

*Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

If both requirements of the threshold *Cotton* test are satisfied and there is no evidence to suggest the claimant is malingering, the ALJ may only discredit and reject the claimant's testimony regarding the severity of the symptoms by providing clear and convincing reasons. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). In evaluating the claimant's credibility, the ALJ may consider ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other statements by the claimant that appear to be less than candid. *Smolen*, 80 F.3d at 1284; *see also* Social Security Ruling ("SSR") 96-7p, 1996 WL 374186. The ALJ may also consider the following factors to determine the claimant's credibility: the claimant's daily activities; the nature, onset, and frequency of her symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication; treatment other than medication; measures used to relieve symptoms; and functional limitations caused by the symptoms. *Smolen*, 80 F.3d at 1284; 20 C.F.R. § 416.929(c)(3).

The ALJ's reasons for discrediting and rejecting the claimant's testimony must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). "The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284. However, if the ALJ provides at least "arguably germane reasons for dismissing" the claimant's testimony, "even if he did not clearly link his determination to those reasons," then the ALJ's decision is supported by substantial evidence. *Lewis v. Apfel,* 236 F.3d 503, 512 (9th Cir. 2001).

The ALJ agreed that Ms. Lopez met the *Cotton* standard by first finding that Ms. Lopez was severely impaired and then also finding that Ms. Lopez's impairments "could reasonably be expected to produce some of [her] alleged symptoms." (A.R. 16, 19.) However, the ALJ found that Ms. Lopez's statements regarding "the intensity, persistence and limiting effects of [her] symptoms are not entirely credible." (*Id.*) The ALJ provided clear and convincing reasons for finding that Ms. Lopez's testimony was not credible and should be rejected.

### A.    *Daily Activities*

The ALJ found that Ms. Lopez's testimony regarding the severity of her symptoms was not credible based on inconsistencies between Ms. Lopez's daily activities and her subjective complaints. Specifically, the ALJ noted that Ms. Lopez's alleged anxiety about leaving her house, and resultant panic attacks when she does leave, are not consistent with her daily activities. (*Id.*) The ALJ cited conflicting evidence from Ms. Lopez's daily activities which include grocery shopping twice a month, seeing a friend about three times a week, occasionally using public transit, taking overnight trips to another town to visit her son's grandmother on two occasions, attending her children's school conferences and events, going to the public library once a month, going to the park with her children, and swimming three times a week during the summers when the pools are open. (A.R. 19, 93, 304-308.)

Though a claimant need not be utterly incapacitated to be disabled, *Fair*, 885 F.2d at 603, Ms. Lopez's activities suggest that she is capable of activities that are inconsistent with her claims and are transferable to a work setting. The conflict between Ms. Lopez's alleged subjective complaints and her daily activities is a clear and convincing reason for discrediting and rejecting her testimony.

PAGE 8 - OPINION AND ORDER

### B.    Work History

The ALJ's did not err in balancing Ms. Lopez's work history against the available
evidence and finding that it did not support her subjective symptom testimony.  Ms. Lopez
correctly notes "a poor work history may be probative of a claimant's inability to work."  (Pl.'s
Br. (#22) 27.)  However, the ALJ must consider this evidence along with "all of the available
evidence," including any "inconsistencies in the evidence" and the extent to which there are
"conflicts between [the claimant's] statements and the rest of the evidence."  20 C.F.R.
§ 416.929(c)(4).  Consequently, the ALJ balanced Ms. Lopez's "weak" work history along with
her ability to complete a GED and her attempts to find employment as part of the larger process
of evaluating supporting evidence for Ms. Lopez's subjective symptom testimony.  (A.R. 19.)
The ALJ found that Ms. Lopez's weak work history, in light of all other evidence, did not fully
support her claims regarding the intensity, persistence, and limiting effects of her symptoms.
Therefore, the ALJ's did not err in balancing Ms. Lopez's work history against the other available
evidence.

### C.    Conservative Treatment

The ALJ also cited Ms. Lopez's conservative treatment as a clear and convincing reason
for discrediting and rejecting her testimony regarding the severity of her symptoms.  An ALJ may
consider a claimant's use of effective, conservative treatment as a factor in discrediting and
rejecting subjective symptom testimony.  *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001,
1006 (9th Cir. 2006) (regarding effective treatment); 20 C.F.R. § 416.929(c)(3) (regarding level
of treatment).

In discrediting Ms. Lopez's testimony, the ALJ cited multiple reports that Ms. Lopez

responded well to conservative treatment including counseling, relaxation exercises, and

medication.  Ms. Lopez's treatment enabled her to function well in daily activities including

swimming, handicrafts, and caring for her children.  (A.R. 272, 164-168.)  The ALJ relied on

substantial evidence in the record that Ms. Lopez consistently responded positively to her

treatment since her hospitalization.  Therefore, the ALJ provided a clear and convincing reason

for rejecting Ms. Lopez's subjective symptom testimony by citing her conservative treatments.

### D.     Conflicting Reports of Drug Use

The ALJ also discredited and rejected Ms. Lopez's testimony based on clear and

convincing reasons because she was not candid in her statements regarding prior drug use.  On

May 4, 2004, in a visit to the hospital, Ms. Lopez denied using illegal drugs.  (A.R. 260.)

However, on May 10, 2004, upon admission to the hospital for psychiatric care, Ms. Lopez tested

positive for marijuana use.  (A.R. 246, 270.)  Ms. Lopez later admitted occasional marijuana use

to Dr. Boverman on August 5, 2004.  (A.R. 208.)  Since that time, Ms. Lopez has either denied

ever using marijuana or denied using it since she was fifteen years old.  (A.R. 275, 302.)  The

only explanations that Ms. Lopez provides for her contradictory reports of drug use is that she

either "misread the question" presented to her or she forgot about her prior use.  (A.R. 303-04.)

The ALJ appropriately used Ms. Lopez's lack of candor regarding her drug history as an ordinary

technique of evaluating credibility and a clear and convincing reason for rejecting her testimony.

Based on the foregoing, the ALJ provided clear and convincing reasons for rejecting Ms.

Lopez's testimony with findings sufficiently specific to permit this Court to conclude that the

ALJ did not arbitrarily discredit her testimony.

II.    <u>**The ALJ Properly Assessed the Medical Testimonies**</u>

Ms. Lopez argues that the ALJ improperly rejected the opinions of Ms. Cech, Dr. Boverman, Dr. Blanchard, and Dr. Spendal in favor of opinions from non-examining physicians Dr. LeBray and Dr. Henry.  As discussed hereafter, the ALJ properly assessed the testimony of these individuals in determining that Ms. Lopez was not disabled.

The Ninth Circuit distinguishes between three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  To qualify as a treating physician, a physician must have an ongoing relationship with the claimant. *Benton v. Barnhart*, 331 F.3d 1030, 1038 (9th Cir. 2003).

A treating physician's opinion is given more weight than the opinion of an examining or nonexamining physician. *Lester*, 81 F.3d at 830.  The opinion of an examining physician is given more weight than a nonexamining physician. *Id.*  Opinions from licensed physicians and certified psychologists are considered acceptable medical sources. *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996).  Testimony from other sources other than an acceptable medical source are given less weight than those from acceptable medical sources. *Id.* at 970-71.

The uncontradicted opinion of a treating physician or an examining physician may only be rejected for clear and convincing reasons. *Lester*, 81 F.3d at 830.  If a treating physician or an examining physician's opinion is contradicted by another physician's opinion, the contradicted opinion may be "rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews*, 53 F.3d at 1043).

PAGE 11 - OPINION AND ORDER

Further, the ALJ may give a treating physician's or an examining physician's opinion less weight based on the following factors: (1) the degree to which the opinion is supported by medical signs and laboratory findings; (2) consistency with other evidence in the record; (3) whether the treating source is a specialist; (4) and other factors tending to support or contradict the opinion. 20 C.F.R. § 416.927(d). The ALJ may also give less weight to or reject the opinion of a physician that is based on a claimant's discredited subjective complaints. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Nevertheless, the ALJ may not discount a physician's opinion based on subjective complaints "where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations."[6] *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008).

The ALJ's decision must include specific reasons supported by evidence in the record for the weight given to a treating source's opinion. SSR 96-2p, 1996 WL 374188 at *5.

**A.    *Ewa Cech, M.S.***

Ms. Lopez alleges that the ALJ improperly dismissed Ms. Cech's[7] report regarding Ms. Lopez's level of mental impairment. Ms. Lopez argues that the report was from an acceptable medical source that could only be rejected by clear and convincing reasons, and the report was

---

[6] This formulation, which this Court is required to follow, is awkward. The double negative "does not discredit" really means that the doctor credits the complaints. If the doctor credits the claimant's discredited subjective complaints, without providing his own reasons, then the ALJ may give the opinion less weight under *Tonapetyan*. 242 F.3d at 1149. Thus, the essential question under *Ryan* is whether the doctor provided his own reasons in support of his ultimate opinion. 528 F.3d at 1199-1200.

[7] The plaintiff, in her letter to Ms. Cech, (A.R. 187.), the defendant, in his brief (Def.'s Br. (#27) 9), and the ALJ, in her opinion, (A.R. 20.), all use the spelling "Ewa Check." However, the student therapist spells her name as "Ewa Cech." (A.R. 193.)

PAGE 12 - OPINION AND ORDER

not internally contradictory.  I disagree because the ALJ provided specific reasons supported by

evidence in the record for limiting the weight of Ms. Cech's report,[8] including contradictions in

the report and Ms. Cech's lack of information about Ms. Lopez's drug use.

As an initial matter, Ms. Lopez cites *Gomez v. Chater* to argue that Ms. Cech's report

must be categorized as being from an "acceptable medical source" because it was cosigned by

Kenneth Ihli, Ph.D.  (Pl.'s Br. (#22) 18.)  Although Ms. Cech is an "other source," Dr. Ihli, a

licensed psychologist, is an acceptable medical source of evidence regarding a claimant's

disability.  *See Gomez*, 74 F.3d at 971.  Ms. Lopez fails to note, however, that the *Gomez* case

involved a report that was not only signed by an acceptable medical source, but came from an

"other source" who (1) consulted with an acceptable medical source numerous times over the

course of claimant's relationship with the other source; (2) worked closely under the supervision

of an acceptable medical source; and (3) was acting as an agent of an acceptable medical source

in her relationship with the claimant.  *Gomez*, 74 F.3d at 971.

Ms. Lopez provided no evidence regarding how closely Dr. Ihli supervised Ms. Cech,

how frequently Ms. Cech consulted with him throughout treatment and the preparation of this

report, and whether Ms. Cech was acting as Dr. Ihli's agent in preparing the report.  Although

Ms. Cech's report contains a statement noting that Ms. Lopez received treatment from a team of

"counselors or therapists . . . with a Doctoral level, M.D.; D.O.; Ph.D.; Psy.D.; Ed.D.; or other

Doctoral level person who has a Supervisory or Consultative role" and Dr. Ihli indicated that he

---

[8] Contrary to Ms. Lopez's argument, the ALJ did not reject Ms. Cech's opinion.  Instead, the ALJ did "not give much weight to Ms. Check's [sic] assessment."  (A.R. 21.)  The ALJ considered Ms. Cech's report in determining Ms. Lopez's impairments (A.R. 16-17) and her residual functional capacity (A.R. 20-21).

PAGE 13 - OPINION AND ORDER

is a supervisor to Ms. Cech, no further explanation or detail is provided. (A.R. 193.) It is not clear that Ms. Cech's report is sufficiently similar to the nurse practitioner's report in the *Gomez* case to find that it came from an acceptable medical source.

Regardless, assuming that Ms. Cech's report is from an acceptable medical source, the ALJ provided specific reasons for giving Ms. Cech's opinion less weight. *See* SSR 96-2p, 1996 WL 374188 at *5. The ALJ gave Ms. Cech's opinion less weight, in part, because her findings are contradictory. This contradiction is one of those "other factors" relevant to Ms. Lopez's case that the ALJ properly considered as tending to contradict the opinion of a treating source. 20 C.F.R. § 416.927(d)(6).

Ms. Cech indicated that Ms. Lopez's difficulties in maintaining social functioning as well as her limitations in daily activities were "marked." (A.R. 192.) However, Ms. Cech also indicated that Ms. Lopez's ability to get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes was "limited but satisfactory." (A.R. 191.)

Ms. Lopez argues that Ms. Cech's findings are not contradictory because Ms. Lopez's social functioning limitations relate to her agoraphobia and her withdrawal from others, not her ability to get along with co-workers or peers. However, when determining a claimant's limitations in social functioning, the ALJ may consider, among other evidence, the claimant's social functioning in the work situations including "cooperative behaviors involving coworkers." 20 C.F.R. pt. 404 subpt. P app. 1 § 12.00(C)(2) (2008). As a result, Ms. Cech's finding that Ms. Lopez has marked difficulties with social functioning because of social withdrawal is relevant, and contradictory, to a finding that Ms. Lopez can "get along with co-workers or peers without . . . exhibiting behavioral extremes." (A.R. 191.) Therefore, the ALJ relied on substantial

PAGE 14 - OPINION AND ORDER

evidence in the record to find that Ms. Cech's opinion was inconsistent.

The ALJ also gave Ms. Cech's opinion less weight in part because she answered "N/A" (i.e., not applicable) to questions regarding whether Ms. Lopez's use of either drugs or alcohol further affected her mental or emotional problems. (A.R. 193.) From Ms. Cech's answer, it appears that Ms. Cech either didn't review Ms. Lopez's records or Ms. Lopez never disclosed that she occasionally used marijuana and, therefore, Ms. Cech did not know that Ms. Lopez used Marijuana. Ms. Lopez argues that her marijuana use would not have had a dramatic effect on all of her functioning, but this argument misses the ALJ's point. The ALJ accorded Ms. Cech's opinion less weight in part because either Ms. Cech had incomplete records or she failed to draw on her records when completing Ms. Lopez's report. Regardless, Ms. Cech's inability to complete the report with full knowledge of Ms. Lopez's circumstances undermines the credibility of Ms. Cech's report.

Therefore, the ALJ did not give much weight to Ms. Cech's opinion due to internal contradictions in her report and her failure to consult or have complete records on Ms. Lopez's drug use. The ALJ provided specific reasons based on evidence in the record for giving Ms. Cech's opinion less weight.

### B.    Dr. Joshua Boverman, M.D.

Ms. Lopez contends that the ALJ improperly dismissed Dr. Boverman's opinion that Ms. Lopez is disabled. She argues that Dr. Boverman's opinion is not based entirely upon Ms. Lopez's subjective complaints, that his findings are not inconsistent, and, as a result, the ALJ "cherry pick[ed]" from Dr. Boverman's opinion without considering his entire report. (Pl.'s Br. (#22) 19-21.) I disagree. The ALJ cited specific reasons based on evidence in the record for

PAGE 15 - OPINION AND ORDER

giving Dr. Boverman's opinion less weight. *See* SSR 96-2p, 1996 WL 374188 at *5.

First, Dr. Boverman's opinion received less weight because his opinion appears to be based on Ms. Lopez's inconsistent and discredited claims. The ALJ may discount the opinion of a physician if it is based on the claimant's discredited subjective complaints. *Tonapetyan*, 242 F.3d at 1149. Nevertheless, the ALJ may not discount the physician's opinion if the physician does not discredit the claimant's complaints and supports his ultimate opinion with his own observations. *Ryan*, 528 F.3d at 1199-1200.

As discussed above, the ALJ rejected Ms. Lopez's subjective complaints due to her lack of credibility and contradictory reports. Throughout his opinion, Dr. Boverman refers to symptoms that Ms. Lopez feels or reports. Dr. Boverman credits Ms. Lopez's complaints, and he offers no evidence that his findings of Ms. Lopez's disability are supported by his own observations, medical signs, or laboratory findings. The only observations he appears to offer independent of her subjective complaints is that she is "anxious" but has a "bright affect, pleasant demeanor," and is "cooperative and sociable." (A.R. 208.) Therefore, the ALJ did not err in giving Dr. Boverman's opinion less weight because it was based on Ms. Lopez's discredited subjective complaints and was not supported by Dr. Boverman's own observations.

The ALJ also noted that Dr. Boverman's opinion includes statements that are contradicted by both his own report and another report in the record. Dr. Boverman's opinion includes contradictory reports of Ms. Lopez's childhood as being both a happy childhood as well as one marked by sexual abuse. (*Id.*) Further, his opinion states that Ms. Lopez was not diagnosed with a specific learning disability, but a report from a social worker stated that she had learning disabilities. (A.R. 161.) Though these contradictions may be due to Ms. Lopez's own reports as

opposed to independent findings from Dr. Boverman, that only strengthens the ALJ's conclusion that Dr. Boverman relied on Ms. Lopez's discredited complaints in writing his opinion.

Ms. Lopez contends that Dr. Boverman's opinion is not based solely on her subjective complaints, but she provides no examples from Mr. Boverman's report to support her argument. In addition, though Dr. Boverman seems to cite Dr. Blanchard or Dr. Blanchard's notes as an additional source of information, Dr. Blanchard's opinion was also rejected by the ALJ based on similar reasons. Therefore, the ALJ provided a specific reason for giving Dr. Boverman's opinion less weight—it was based on Ms. Lopez's subjective complaints which were not credible.

Furthermore, the ALJ was not required to rely on Dr. Boverman's ultimate conclusions that Ms. Lopez is disabled and that it is "unreasonable" to expect Ms. Lopez to obtain employment. (A.R. 207.) The ALJ is not required to give any weight to a physician's opinion as to the ultimate issue of whether a claimant is legally disabled. 20 C.F.R. § 416.929(e)(1); *see also Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000) (explaining that a physician's opinion of disability is not a legal opinion).

Therefore, the ALJ provided specific reasons based on evidence in the record to give Dr. Boverman's opinion less weight.

### C.    *Dr. Shawn Blanchard, M.D.*

Ms. Lopez argues the ALJ also improperly rejected Dr. Blanchard's opinion that Ms. Lopez is disabled. She argues that Dr. Blanchard properly relied on her complaints, that the ALJ had a duty to recontact Dr. Blanchard, and that there is no evidentiary basis that Dr. Blanchard's prescribed treatments were conservative. I disagree. The ALJ rejected Dr. Blanchard's opinion

based on clear and convincing reasons.  *See Lester*, 81 F.3d at 830.

First, the ALJ rejected Dr. Blanchard's opinion because it was based on Ms. Lopez's

discredited subjective complaints.  *See Tonapetyan*, 242 F.3d at 1149.  Dr. Blanchard also failed

to support his ultimate opinion with his own observations.  *See Ryan*, 528 F.3d at 1199-1200.

Instead, Dr. Blanchard provides a conclusory opinion that Ms. Lopez is disabled without support

from his own observations.

Ms. Lopez does not dispute that Dr. Blanchard's opinion was based on her subjective

complaints.  She correctly points out that the ALJ may consider a physician's opinion even if it is

based on a claimant's subjective complaints.  However, as support, Ms. Lopez cites a case from

the Eighth Circuit where the claimant's complaints were consistent with objective evidence and

there was no reason to doubt her testimony.  *Flanery v. Chater*, 112 F.3d 346, 350 (8th Cir.

1997).  In contrast, Ms. Lopez's subjective complaints are not credible and there is reason to

doubt her testimony.

Ms. Lopez also argues that Dr. Blanchard would not have prescribed treatments for

seizures, asthma, and bipolar disease if Ms. Lopez did not suffer these impairments.  This

argument ignores the ALJ's findings that Ms. Lopez suffered from severe impairments including

"reactive airway disease, pseudoseizures, borderline or low average intellectual functioning, a

bipolar disorder, and an anxiety disorder."  (A.R. 16.)  The ALJ found that Ms. Lopez was

severely impaired, but she further found that Ms. Lopez's symptoms were not so severe as to

constitute a disability.  The ALJ had a clear and convincing reason to reject Dr. Blanchard's

opinion because it was based on Ms. Lopez's discredited complaints.

Second, the ALJ rejected Dr. Blanchard's opinion because of its vague and ambiguous

description of when Ms. Lopez's impairments began and how long they would last.  Ms. Lopez responds by arguing that the ALJ had a duty to recontact Dr. Blanchard to clarify his opinion. The ALJ is only required to recontact a claimant's physician if the physician's report is either ambiguous or insufficient for the ALJ to make a determination of the claimant's disability. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).  However, if the ALJ finds adequate evidence with support in the record to make a determination about the claimant's disability, the ALJ has no duty to recontact the physician.  *Id.*

Though the ALJ determined that Dr. Blanchard's opinion was vague and ambiguous with respect to the onset and expected length of Ms. Lopez's impairments, the ALJ also found adequate evidence with support in the record for finding that Ms. Lopez was not disabled. Specifically, the ALJ found adequate evidence in the other opinions that the ALJ considered, including Dr. LeBray, Dr. Henry, Ms. Cech, and Dr. Boverman.  As a result, the ALJ had no duty to recontact Dr. Blanchard.  Therefore, the ALJ cited Dr. Blanchard's vague and ambiguous descriptions as a clear and convincing reason for rejecting his opinion.

Third, the ALJ also rejected Dr. Blanchard's opinion because Ms. Lopez's conservative treatment was inconsistent with the doctor's findings that she was disabled.  Despite Ms. Lopez's arguments to the contrary, the ALJ provides evidence that her treatment was conservative. Specifically, the ALJ notes that since the time of Ms. Lopez's hospitalization, she has received counseling, instruction on relaxation techniques, and three types of medication.  (A.R. 20.) Further, Ms. Lopez appears to have responded well to this treatment.  (A.R. 207-09.)  As a result, the ALJ rejected Dr. Blanchard's opinion based on the clear and convincing reason that Ms. Lopez's conservative treatment was inconsistent with his opinion that she is disabled.

PAGE 19 - OPINION AND ORDER

Moreover, the ALJ had no duty consider Dr. Blanchard's statements regarding whether Ms. Lopez is disabled or able to work.  It is the ALJ's responsibility to determine whether or not the claimant is legally disabled.  20 C.F.R. § 416.929(e)(1); *see also Harman*, 211 F.3d at 1180. Therefore, the ALJ provided clear and convincing reasons for rejecting Dr. Blanchard's opinion.

### D.    Dr. Jill Spendal, Psy.D.

Ms. Lopez argues that the ALJ provided no rationale to reject Dr. Spendal's opinion as related to her intellectual functioning and no specific and legitimate reasons as related to her social limitations.  (Pl.'s Br. (#22) 23-24.)  The ALJ determined that Dr. Spendal's opinion is "not entitled to weight" because it was inconsistent with the evidence of the record and relied too heavily on Ms. Lopez's subjective complaints.[9]  (A.R. 22.)  For the reasons discussed below, the ALJ properly provided (1) specific and legitimate reasons for rejecting Dr. Spendal's opinion as related to Ms. Lopez's intellectual functioning, and (2) clear and convincing reasons for rejecting the opinion as related to Ms. Lopez's social limitations.

### 1.    Intellectual Functioning

Dr. Spendal's 2007 evaluation regarding Ms. Lopez's intellectual functioning was contradicted by Dr. Bullock's 1998 evaluation.  Dr. Bullock's assessment was designed to evaluate whether Ms. Lopez had a learning disability for the purposes of determining whether GED accommodations were appropriate.  (A.R. 22.)  Dr. Bullock concluded that although Ms. Lopez had low intellectual functioning, she did not have any learning disabilities and had

---

[9] The ALJ stated that Dr. Spendal's opinion is "not entitled to weight."  (A.R. 22.)  It is not very clear whether the ALJ "totally rejected" the opinion, as Ms. Lopez argues, (Pl.'s Br. (#22) 23), or considered the opinion but assigned it less weight.  This Court interprets it to mean the ALJ rejected the opinion.

adequate intellectual capacity to complete her GED without any need for accommodations.

(A.R. 156-58.)  On the other hand, Dr. Spendal opined that Ms. Lopez was disabled because her

borderline intellectual functioning would make work impossible.  (A.R. 276, 282.)

Dr. Spendal and Dr. Bullock appear to disagree over the extent of Ms. Lopez's mental

limitations, and here the ALJ provided specific and legitimate reasons to reject Dr. Spendal's

contradicted opinion.  *See Lester*, 81 F.3d at 830-31; *see also Andrews*, 53 F.3d at 1039 ("The

ALJ is responsible for . . . resolving conflicts in medical testimony." (citing *Magallanes v.*

*Bowen*, 881 F.2d 747, 750 (9th Cir. 1989))).  The facts—Ms. Lopez does not have any learning

disabilities and she satisfactorily obtained her GED without any accommodations—suggest that

Ms. Lopez's mental limitations are not as disabling as Dr. Spendal opines.  Therefore, there are

specific and legitimate reasons cited by the ALJ for rejecting Dr. Spendal's contradicted opinion.

### 2.    Social Limitations

In rejecting Dr. Spendal's opinion regarding Ms. Lopez's social limitations, the ALJ cited

to Dr. Spendal having relied too much on Ms. Lopez's subjective complaints, rather than

objective findings.[10]  Based on a combination of  Ms. Lopez's reported symptoms and Dr.

Spendal's clinical observations, Dr. Spendal opined that Ms. Lopez experiences "recurrent

anxiety," demonstrates "avoidant and schizoid personality disorders," and concluded that

"working would be impossible."  (A.R. 280.)  Here, the ALJ erred because questioning the

credibility of Ms. Lopez's subjective complaints is not a clear and convincing reason to reject Dr.

---

[10] Unlike Dr. Spendal's opinion as related to Ms. Lopez's intellectual functioning, Dr. Spendal's opinion as related to her social limitations is not contradicted by another doctor's opinion.  The legal standard for rejecting an examining doctor's uncontradicted opinion is to provide clear and convincing reasons.  *Lester*, 81 F.3d at 830.

PAGE 21 - OPINION AND ORDER

Spendal's opinion where Dr. Spendal credited Ms. Lopez's complaints and provided her own observations to support her conclusions regarding Ms. Lopez's social limitations. *See Ryan*, 528 F.3d at 1199-1200.

However, the harmless error rule dictates that decisions of the ALJ will not be reversed for harmless errors. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). The error is harmless if it is inconsequential or nonprejudicial to the ultimate nondisability determination. *See id.* at 1055 (citing *Burch*, 400 F.3d at 682).

The ALJ's error is harmless because it is inconsequential to the ALJ's ultimate determination. The ALJ properly rejected Dr. Spendal's opinion because it is not consistent with the overwhelming weight of the evidence as related to Ms. Lopez's social functioning. *See Lester*, 81 F.3d at 830-31 (holding that the ALJ may reject an examining doctor's opinion when there is a clear conflict between the examining doctor's opinion and the overwhelming weight of the entire record (citing *Andrews*, 53 F.3d at 1043)). Dr. Spendal opined that Ms. Lopez "lives in a nearly constant state of fear . . . fear of leaving her house," has "moderate" limitations in activities of daily living, and "marked"[11] limitations in social functioning. (A.R. 282, 287.) However, as the record shows, Ms. Lopez successfully completed her GED and engages in many daily activities such as swimming three times a week in the summers, attending her children's school events, grocery shopping twice a month, visiting the library once a month, taking her kids to the park, and occasionally using public transportation. Thus, the ALJ provided clear and convincing reasons to reject Dr. Spendal's opinion because it is in clear conflict with the

---

[11] "Marked" means "more than moderate but less than extreme." (A.R. 17.)

overwhelming weight of the record.

For the foregoing reasons, the ALJ properly assessed the opinions of Ms. Cech, Dr. Boverman, Dr. Blanchard, and Dr. Spendal.

III.    **The ALJ Properly Determined Plaintiff's Residual Function Capacity**

The RFC is an "assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1. A claimant's RFC is the most she can do despite her impairments and limitations. 20 C.F.R. § 416.945. In assessing the RFC, the ALJ must consider the whole record and explain how she weighs the medical evidence and testimony. SSR 96-5p, 1996 WL 374183, at *5.

The ALJ determined that Ms. Lopez has the RFC "to perform a range of work at all exertional levels but with the following nonexertional limitations: she is restricted to simple, unrushed tasks involving no more than casual or routine social interaction with the public. Additionally, she should avoid hazards." (A.R. 18.) Ms. Lopez argues that the ALJ incorrectly determined her RFC because the ALJ (1) improperly rejected medical opinions; (2) did not properly consider all of Ms. Lopez's impairments as required by SSR 96-8p; and (3) did not address the "moderate" limitations in concentration, persistence, or pace found by the non-examining State agency physicians. (Pl.'s Br. (#22) 28-9.) Based on the discussions below, the ALJ properly determined Ms. Lopez's RFC.

A.    *Medical Opinions*

Ms. Lopez claims that the ALJ improperly rejected or minimized medical opinions and this impacted the ALJ's RFC determination. (Pl.'s Br. (#22) 28.) As discussed above, the ALJ properly assessed the medical opinion evidence. Thus, the ALJ did not erroneously reject or

PAGE 23 - OPINION AND ORDER

minimize the medical opinions in determining the RFC.

**B.    Plaintiff's Impairments**

Ms. Lopez claims that the ALJ did not assess all of her impairments, specifically her (1) pseudoseizures, (2) borderline or low intellectual functioning, and (3) adverse reaction to stress when required to leave her home.  (Pl.'s Br. (#22) 29.)

**1.    Pseudoseizures**[12]

Ms. Lopez argues that the ALJ did not consider the full impact of her pseudoseizures in the work place.  (*Id.*)  Ms. Lopez cites to *Flanery v. Chater*, in arguing that she may suffer seizures that are more "disruptive" in the workplace than in her home environment.  (*Id.*)

In *Flanery*, the Court found the plaintiff disabled and reasoned that the plaintiff's seizures "may not be totally disruptive in a home environment, but could hardly be accommodated in the workplace."  112 F.3d at 350.  However, *Flanery* is distinguishable from the present record because the plaintiff in *Flanery* suffered from much more severe, frequent, and unpredictable seizures than Ms. Lopez.  Ms. Flanery's seizures generally lasted anywhere from fifteen seconds to a full minute, occurred up to five or six times a day, produced after-effects requiring her to rest at least thirty minutes, and occasionally caused her to go in and out of consciousness.  *Id.* at 347, 349-50.  On the other hand, according to Ms. Lopez's testimony, her seizures generally last around two seconds each, occur one to three times a week at around six o'clock in the evening, produce no after-effects, and she is conscious and aware of everything around her during a seizure but cannot move or talk.  (Pl.'s Br. (#22) 9; A.R. 298, 317.)

---

[12] The medical record uses the terms "seizures" and "pseudoseizures" interchangeably when referring to Ms. Lopez's impairment.

PAGE 24 - OPINION AND ORDER

Nonetheless, the ALJ took into consideration Ms. Lopez's seizures and found them to be a

severe impairment. (A.R. 16.) Dr. LeBray and Dr. Robert, both non-examining psychologists

consulted by Disability Determination Services, assessed Ms. Lopez and agreed that she should

avoid hazardous settings because of risk of relapse. (A.R. 21, 171.) The ALJ agreed with the

assessment and adopted their conclusions into the RFC. (A.R. 21.) The record does not support

Ms. Lopez's assertion that the ALJ failed to assess the impact of the seizures in the work place.

Therefore, the ALJ properly took into account the whole record. The avoidance of hazards is a

reasonable restriction based on Ms. Lopez's seizures because her seizures usually last no longer

than two seconds, have no after-effects, and she remains conscious during the seizures.

### 2.    Borderline or Low Intellectual Functioning

Ms. Lopez argues that the ALJ did not assess the full impact of her borderline or low

intellectual functioning in determining her RFC. (Pl.'s Br. (#22) 29.)

The ALJ recognized Ms. Lopez's borderline or low intellectual functioning as one of her

severe impairments. (A.R. 16.) After careful review of the entire record, the ALJ properly

accounted for the impact of Ms. Lopez's borderline or low intellectual functioning in the RFC by

limiting Ms. Lopez to simple, unrushed tasks. (A.R. 18.) In Dr. Bullock's 1998 evaluation, Dr.

Bullock noted that despite Ms. Lopez's low intellectual functioning, Ms. Lopez had the "adequate

intellectual capacity to complete her GED" and did not have any learning disorders. (A.R. 158.)

In fact, Ms. Lopez satisfactorily obtained her GED without any accommodations in 2000. (A.R.

22, 207.) In a more recent evaluation in March of 2007, Dr. Spendal noted that concentration

and attention were some of Ms. Lopez's strengths. (A.R. 282.) Dr. LeBray and Dr. Henry opined

that Ms. Lopez could "understand, remember and complete simple, paced (unrushed)

tasks/routines." (A.R. 171.)  Therefore, the ALJ's RFC restriction of simple, unrushed tasks

appropriately addresses the full impact of Ms. Lopez's borderline or low intellectual functioning

in the work place because the restriction is consistent with the medical testimony.

### 3.    Reaction to Stress, Such as When Required to Leave her Home

Ms. Lopez alleges that she cannot work because she experiences problems with

concentration, nervousness, and seizures when she becomes over-stressed.  (Pl.'s Br. (#22) 5.)

She argues that because of her alleged agoraphobia, leaving the house causes her stress, which in

turn causes her seizures and thus, she is not able to work.  (A.R. 297.)  As a result, she argues

that the ALJ did not properly consider the full impact of her reaction to stress.

In consideration of Ms. Lopez's difficulties dealing with the public, the ALJ limited the

RFC determination to "tasks involving no more than casual or routine social interaction with the

public." (A.R. 18.)  The ALJ examined Ms. Lopez's daily activities.  (A.R. 19.)  Ms. Lopez

testified that she goes grocery shopping twice a month, sees friends about three times a week, has

taken the public transit on seven occasions, has taken overnight trips to another town to visit her

son's grandmother on two occasions, attends her children's school conferences and events, takes

her kids to the park, goes to the public library once a month, and swims three times a week

during the summers when the pools are open.  (A.R. 19, 304-308.)  Although the record reflects

that Ms. Lopez has moderate difficulties regarding social functioning and a "limited but

satisfactory" ability to get along with others without disrupting others (A.R. 17), her fairly

extensive list of daily activities suggest otherwise.  Based on Ms. Lopez's activities, the ALJ

properly concluded that her activities were not consistent with her allegations that she fears

leaving her home and has panic attacks as a result of her agoraphobia.  (A.R. 19.)

PAGE 26 - OPINION AND ORDER

Based on their review of Ms. Lopez's entire record, Dr. LeBray and Dr. Henry opined that

Ms. Lopez should not closely engage the public because of affective distress and should avoid

hazardous settings because of risk of relapse, but can otherwise work fine with others on a

casual, routine basis.  (A.R. 21, 171.)  The ALJ agreed with this assessment and adopted Dr.

LeBray and Dr. Henry's conclusion into the RFC.  (A.R. 21.)  Thus, the ALJ properly assessed

the full impact of Ms. Lopez's reaction to stress.

### C.    Limitations in Concentration, Persistence, or Pace

Ms. Lopez argues that the ALJ did not consider the "moderate" limitations in

concentration, persistence, or pace found by Dr. LeBray and Dr. Henry in the Mental Residual

Functional Capacity Assessment ("MRFCA") and the Psychiatric Review Technique ("PRTF").[13]

(Pl.'s Br. (#22) 29.)  I disagree.

The Ninth Circuit has held that an ALJ's assessment of a plaintiff adequately addresses

limitations in concentration, persistence, or pace if the assessment is consistent with the

limitations identified in the medical testimony.  *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174

(9th Cir. 2008).  Ms. Stubbs-Danielson argued that the ALJ's RFC determination did not capture

the mental limitations identified by her doctors regarding her slow pace in thinking and actions,

and other moderate mental limitations indicated by her medical record.  *Id.* at 1173.  Dr. Eather

identified Ms. Stubbs-Danielson's slow pace in thinking and several moderate mental limitations

and subsequently concluded that she could perform simple work as evidenced by her daily

---

[13] Ms. Lopez further argues that the ALJ also did not consider that Ms. Lopez required "guidance setting realistic goals (voc support)" as noted by Dr. LeBray and Dr. Henry.  (Pl.'s Br. (#22) 29.)  The Commissioner responds that this is a vocational guidance issue, and not a specific functional limitation.  (Def.'s Br. (#27) 15.)  Ms. Lopez does not raise this issue again in her Reply Brief.  I agree with the Commissioner's interpretation because "voc support" appears to refer to vocational support and not a specific functional limitation.

activities. *Id.* Ms. Stubbs-Danielson's daily activities included cooking, house cleaning, working on hobbies, and managing the household finances. *Id.* 1174. Based on Dr. Eather's recommended restriction of "simple tasks," the ALJ's RFC finding limited the plaintiff in *Stubbs-Danielson* to "simple, routine, repetitive sedentary work." *Id.* at 1173-74. The Ninth Circuit affirmed the ALJ's decision and concluded that Ms. Stubbs-Danielson's activities of daily living suggested that she was capable of remunerative, unskilled work. *Id.* at 1175. The Ninth Circuit held that the ALJ's RFC restriction of "simple, routine . . . work" adequately captured the deficiency in pace, concentration, or persistence because the assessment was consistent with her individual record as a whole. *Id.* at 1173-74.

Here, Dr. LeBray and Dr. Henry noted that Ms. Lopez was "moderately limited" in several mental areas and recommended that the RFC be restricted to "simple, unrushed tasks." The ALJ found that although Ms. Lopez has mild difficulties in concentration, persistence, or pace, Ms. Lopez still managed to satisfactorily obtain her GED and her daily activities of cooking cleaning, and paying bills. The ALJ addressed Ms. Lopez's restrictions related to concentration, persistence, or pace by restricting its RFC finding to "simple, unrushed tasks" based on Dr. LeBray and Dr. Henry's recommendation of "simple, paced (unrushed) tasks." Thus, the ALJ's RFC restriction adequately captures Ms. Lopez's deficiency in pace, concentration, or persistence because the assessment is consistent with the limitations identified in the medical testimony and her extensive daily activities suggest that she is not disabled.

IV.    **The ALJ's Step Five Findings**

Ms. Lopez argues that the ALJ's step five finding was not supported by substantial evidence because the hypothetical presented to the Vocational Expert ("VE") contained a

PAGE 28 - OPINION AND ORDER

defective RFC.  (Pl.'s Br. (#22) 30.)  However, as discussed above, the ALJ properly determined

the RFC.  Thus, the RFC was not defective, and the ALJ's step five finding was supported by

substantial evidence.

## CONCLUSION

The Commissioner's decision that Ms. Lopez did not suffer from disability and is not

entitled to benefits under Title XVI of the Social Security Act is based upon correct legal

standards or supported by substantial evidence.  The Commissioner's decision should be

AFFIRMED.

IT IS SO ORDERED.

Dated this   6th   day of August, 2009.

/s/ Michael W. Mosman
Michael W. Mosman
United States District Judge

PAGE 29 - OPINION AND ORDER